UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**CHRISTOPHER WHITE (#365408)**                              **CIVIL ACTION**

**VERSUS**

**LT. HOWARD BROWN, ET AL.**                                  **NO. 13-0017-JJB-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 16, 2014.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　**RICHARD L. BOURGEOIS, JR.**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHRISTOPHER WHITE (#365408)                                  CIVIL ACTION

VERSUS

LT. HOWARD BROWN, ET AL.                                     NO. 13-0017-JJB-RLB

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' cross-motions for summary judgment (Rec. Docs. 39 and 41).

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Lt. Howard Brown, Capt. James Dauzat, Col. Ray Vittorio and Ass't Warden Carl (Tim) Delaney, complaining that his constitutional rights were violated on July 24, 2012, when defendant Howard Brown issued the plaintiff a false disciplinary report and subjected him to excessive force, allegedly pursuant to instructions given by defendant James Dauzat.  Pursuant to the Amended Complaint, the plaintiff has asserted an additional claim that he was not provided with appropriate medical attention after the referenced incident.

The plaintiff moves for summary judgment, relying upon the pleadings, a Statement of Facts in Dispute, an excerpt from the LSP Tiger Cellblock logbook for the date July 24, 2012, an excerpt from the Chemical Agent Logbook for the Tiger Cellblock which includes the date July 24, 2012, copies of excerpts from his disciplinary appeal records, and the affidavits of Major Daniel Davis, Dr. Jason Collins and defendants James Dauzat, Howard Brown and Carl (Tim) Delaney.

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of a Disciplinary Report dated July 24, 2012 (prepared by defendant James Dauzat and charging the plaintiff with Contraband), a certified copy of a Disciplinary Report dated July 24, 2012 (prepared by Sgt. James Guidry and charging the plaintiff with Defiance, Aggravated Disobedience and Property Destruction), a certified copy of a Disciplinary Report dated July 24, 2012 (prepared by defendant Howard Brown and charging the plaintiff with Defiance and Aggravated Disobedience), a certified copy of an Unusual Occurrence Report dated July 24, 2012 (prepared by defendant Howard Brown), a certified copy of an excerpt from the Tiger Unit Chemical Agent Logbook which includes the date July 24, 2012, a certified copy of excerpts from the plaintiff's disciplinary proceedings, administrative proceedings and medical records, a certified copy of excerpts from the Disciplinary Rules and Procedures for Adult Offenders (2008 ed.), a certified copy of LSP Directive No. 09.002 (relative to "Use of Force), written responses to discovery by defendants Tim Delaney and Howard Brown, a copy of an Investigative Services Lab Worksheet, and the affidavits of Sgt. James Guidry, Dr. Jason Collins, Major Daniel Davis and defendants James Dauzat, Carl (Tim) Delaney and Howard Brown.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*,

477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).

In his Complaint, the plaintiff alleges that on July 24, 2012, defendant James Dauzat issued the plaintiff a disciplinary report, charging the plaintiff with possession of Contraband, and placed the plaintiff in the shower cell on the LSP Tiger cell tier.  Although the plaintiff made a request at that time to defendant Tim Delaney that he be allowed to undergo a lie detector test to establish his innocence, that request was refused.  Instead, defendant Dauzat overheard the plaintiff's request for a lie detector test and stated to the plaintiff in response that defendant Dauzat "had something for plaintiff's smart ass."  Approximately one hour later, defendant

Howard Brown approached the plaintiff in the shower cell and, as the plaintiff approached the bars of the cell, allegedly sprayed a chemical agent into the plaintiff's face without justification. According to the plaintiff, defendant Dauzat was also present on the tier at that time and instructed defendant Brown and another security officer (Sgt. James Guidry, not named as a defendant herein) to issue the plaintiff disciplinary reports, charging the plaintiff with Defiance and Aggravated Disobedience.  According to the plaintiff, when he later attended disciplinary board hearings in connection with the referenced charges (on July 27 and 30, 2012), the disciplinary report issued by defendant Brown was dismissed, allegedly because "the disciplinary court found that Lt. Brown's allegations against plaintiff was fabericated [sic] ... and did not believe that Lt. Brown's use of a chemicial [sic] agent on plaintiff was justifiable by D.O.C. policy."  The plaintiff asserts that defendant Brown's actions in utilizing the referenced chemical agent against the plaintiff was unjustified and was in violation of LSP regulations regarding the use of force, specifically because, according to the plaintiff, the only justification stated by the defendant for the use of force was because the plaintiff was "cursing" and not because the plaintiff was refusing any orders, presenting a threat to anybody or causing any destruction of property.  Further, the plaintiff asserts that although he was seen by a medical technician on the date of the incident, he was not allowed to obtain appropriate medical attention during the next two days.  Finally, the plaintiff asserts (1) that the prison policy relative to the use of force against inmates should be amended, both to require that video cameras be utilized to record all instances of force and to require that only high-ranking prison officials be authorized to utilize chemical agents, and (2) that the defendants involved in the referenced incident be terminated from employment or demoted to the rank of sergeant at LSP.

In response to the plaintiff's allegations, the defendants assert that they are entitled to

qualified immunity in connection with the plaintiff's claims.  Specifically, the defendants assert that the plaintiff will be unable to establish that the defendants participated in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).  As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights.  *Id.* at 201.  Second, the district court looks to whether the rights allegedly violated were clearly established.  *Id.*  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  *Id.*  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  *Id.* at 202.  The assertion of the qualified immunity defense alters the summary judgment burden of proof.  *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."  *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1]

---

1. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.  *Id.*

Undertaking the qualified immunity analysis and evaluating the evidence presented by the parties, the Court concludes that the plaintiff's Motion for Summary Judgment should be denied and that the defendants' Motion for Summary Judgment should be granted, dismissing the plaintiff's claims asserted against the defendants. Specifically, the Court finds that the plaintiff's allegations and evidentiary showing are not sufficient to create a genuine issue of material fact relative to the defendants' entitlement to qualified immunity in connection with his claims.

Initially, to the extent that the plaintiff's allegations may be interpreted as complaining regarding the issuance of allegedly false disciplinary reports against him on July 24, 2012, this claim must be rejected as a matter of law.[2] The law is clear in this regard that the mere issuance

---

2. The record evidence reflects that three disciplinary reports were issued against the plaintiff on the morning of July, 24, 2012. The first report was issued by defendant Dauzat – for Contraband – after a search of the plaintiff uncovered packets which appeared to contain, and which were later determined to contain, marijuana. The plaintiff was then placed in the shower cell on the Tiger cell tier at LSP where a second disciplinary report was issued by Sgt. James Guidry, charging the plaintiff with "Defiance," "Aggravated Disobedience" and "Property Destruction." That second report asserts that the plaintiff was causing a disturbance in his cell, racking the bars and refusing repeated orders by Sgt. Guidry to cease. As a result of this behavior, Sgt. Guidry contacted defendant Howard Brown who arrived on the tier and ultimately issued the plaintiff a third disciplinary report, again charging the plaintiff with "Defiance" and "Aggravated Disobedience." According to this third report, defendant Brown gave "several direct verbal orders to stop cursing and causing a disturbance," which orders the plaintiff repeatedly refused. As a result, defendant Brown ultimately utilized a "one second burst of chemical irritant into the [plaintiff's] cell" to obtain compliance. At subsequent disciplinary hearings which were held in connection with the two latter reports, the reports were initially deferred for an investigation into the times that the various offenses occurred and finally, at the re-scheduled disciplinary hearing, the plaintiff was found guilty in connection with the disciplinary report issued by Sgt. Guidry and was sentenced to a transfer to segregated confinement and to the loss of twelve (12) weeks of canteen privileges. Although the disciplinary report issued by defendant Brown was dismissed, and although the plaintiff asserts that such dismissal was because the disciplinary board found that the report was fabricated, there is no support for this contention. To the contrary, as stated in the affidavit of Major Daniel Davis (Rec. Doc. 39-9), who presided over the referenced disciplinary board hearings, it appears that the board concluded that, inasmuch as the plaintiff had been sentenced to the maximum punishment in connection with Sgt. Guidry's disciplinary report, it would be "a duplication to

of one or more false disciplinary reports and the imposition of resulting punishment, without more, does not amount to a constitutional violation. *Collins v. King*, 743 F.2d 248, 253-54 (5th Cir. 1984) (concluding that due process is satisfied if an inmate plaintiff is provided with disciplinary proceedings which afford him an "opportunity ... to clear himself of misdeeds which he did not commit"). Further, the United States Supreme Court has more recently held that prison disciplinary proceedings do not implicate any constitutionally protected liberty interest unless the resulting punishment has subjected an inmate to an atypical and significant deprivation (evaluated in the context of prison life) in which the State might conceivably have created a liberty interest for the benefit of the inmate. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). In *Sandin*, the Supreme Court concluded that a disciplinary sentence of placement in segregated confinement failed to rise to the level of a constitutional claim. In the instant case, similarly, this Court concludes that the plaintiff's disciplinary punishment, which included a transfer to segregated confinement and the loss of twelve (12) weeks of canteen privileges, did not result in an atypical and significant deprivation within the context of prison life. *See Dickerson v. Cain*, 241 Fed. Appx. 193 (5th Cir. 2007) (finding that placement in segregated confinement at LSP was not "an atypical or significant hardship"). Accordingly, the plaintiff's claim in this regard is without merit in a constitutional sense.$^3$

Turning to the plaintiff's claim that defendant Brown subjected the plaintiff to excessive

---

impose another sentence" for essentially the same behavior and rule violations addressed in defendant Brown's subsequent report.

3. To the extent that the plaintiff complains of the defendants' failure to allow him to take a lie detector test to prove that the referenced disciplinary reports were unfounded, there is no recognized right of an inmate to compel state officials to allow him to take a lie detector test. *See Thompson v. Flaherty*, 2010 WL 3667013, *2 (S.D. Ohio, Sept. 14, 2010), and cases cited therein.

force on July 24, 2012, through the use of a chemical agent on that date, it is well-settled that a use of force is excessive and violates the Eighth Amendment to the United States Constitution only if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment also necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian*, *supra*, 503 U.S. at 10. However, the fact that an inmate may have sustained only minimal injury does not end the inquiry, and an inmate who is subjected to gratuitous force by guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. The extent of injury may be relevant, however, to a determination whether an alleged use of force was excessive under the circumstances, and the factors to be considered in determining whether an alleged use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

      Applying the foregoing standard, the Court finds that the plaintiff has failed to overcome the defendants' assertion of qualified immunity in connection with his claim of excessive force. First, although the plaintiff asserts that defendant Brown failed to comply with applicable prison rules and regulations when utilizing the chemical agent, it is well-settled that a mere violation of prison rules or regulations, without more, does not amount to a constitutional violation. *Jackson*

*v. Cain*, 864 F.2d 1235 (5th Cir. 1989) (recognizing that, so long as minimal constitutional standards are met, an inmate plaintiff "has no federal right to insist that a state follow its own procedural rules").  Second, the plaintiff has not alleged facts and has not presented evidence sufficient to show the existence of a genuine disputed fact regarding whether defendant Brown in fact utilized unreasonable or constitutionally excessive force on the date in question.  Specifically, the plaintiff has not adequately refuted the defendants' sworn assertions and evidentiary showing which reflects that the plaintiff engaged in conduct on that date which justified the use of force.  Whereas the plaintiff asserted in his Complaint that defendant Brown "never once claimed that he gived [sic] plaintiff an order to come to the bars to be restrained and plaintiff refused," the disciplinary charge issued against the plaintiff by defendant Brown on July 24, 2012, as well as the Unusual Occurrence Report of the same date, explicitly accused the plaintiff of "cursing and causing a disturbance" and of "refus[ing] all orders" to cease, which refusal would clearly have justified some level of force if the plaintiff had repeatedly failed to comply.  *See, e.g., Scott v. Hanson*, 330 Fed. Appx. 490, 491 (5th Cir.), *cert. denied*, 558 U.S. 1031 (2009) (affirming a jury verdict in favor of the defendant where evidence was presented at trial that the a use of mace "was justified by [the plaintiff's] continued refusal to comply with orders to cease his disruptive behavior").  Further, other than conclusory statements by the plaintiff that defendant Brown "had no reason to use force" and that the defendant utilized force only as the plaintiff was approaching the bars of the cell to obtain a copy of a prior disciplinary report, the plaintiff makes no explicit sworn assertion that he was *not* cursing and causing a disturbance on the cell tier.  Instead, the plaintiff appears to focus more on his assertion that the use of chemical agent in this case was not permitted by prison rules and/or that it should not be permitted by prison rules when an inmate is merely "cursing" in his cell.  Moreover, the plaintiff

makes no explicit factual assertions which challenge the veracity of the separate initial disciplinary report issued by Sgt. Guidry immediately prior to the use of force by defendant Brown, which report explicitly accused the plaintiff of causing a disturbance and of refusing repeated orders to cease.  The plaintiff was subsequently found guilty in connection with Sgt. Guidry's disciplinary report and was sentenced as previously indicated.  The plaintiff notably has not named Sgt. Guidry as a defendant in this proceeding and has made no factual assertion whatever that the statements made by Sgt. Guidry in the referenced disciplinary report were not accurate.  Thus, the plaintiff's claim that he was providing no justification whatever for the subsequent brief application of chemical spray by defendant Brown is substantially undermined.  Nor does the plaintiff dispute the factual assertion of defendant Brown that only a brief one-second application of chemical spray was utilized, and the medical record prepared in connection with the incident – which reflects no objective symptomatology – is consistent with such minimal application.  *See* Rec. Doc. 39-10 at p. 4.  In short, therefore, the plaintiff has produced no evidence tending to show that the use of force by defendant Brown on July 24, 2012, was for the sole purpose of causing the plaintiff harm or was excessive to the need which was objectively apparent.[4]  Accordingly, on the evidence presented by the parties, the Court finds that the

---

4. The plaintiff places great emphasis on purported discrepancies between the times listed on various items of documentation which were prepared by the defendants and by other prison personnel relative to the incidents of July 24, 2012.  Specifically, the plaintiff points to an entry in the LSP Tiger gas logbook of that date which makes reference to a use of chemical agent against the plaintiff at 10:10 a.m., and also to an affidavit prepared by defendant Brown which similarly makes reference to the time 10:10 a.m. (although the Court notes that the defendant's affidavit makes reference to his having been *notified* at that time).  The plaintiff then points to defendant Brown's disciplinary report and to the tier logbook, both of which, he contends, reflect the time of defendant's arrival on the tier as having been at 10:23 a.m.  In the Court view, however, these discrepancies are not so disparate as to present a genuine disputed issue of material fact.  All of the pertinent events apparently occurred within the space of approximately half an hour, and much of the referenced documentation was prepared after the fact and so included some degree of subjective recollection and estimation.  *See, e.g.*, defendant Brown's

defendants are entitled to summary judgment in connection with this claim.[5]

Turning to the plaintiff's claims asserted against defendants Ray Vittorio and Carl (Tim) Delaney, the plaintiff asserts that these defendants are liable because of their supervisory responsibility at the prison and because they had an obligation to investigate and/or take appropriate action after learning of the incident. This assertion, however, fails to allege any direct personal participation by these defendants in the violations alleged. Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756,

---

Unusual Occurrence Report, which is noted as having been written at 10:35 a.m. on July 24, 2012, and refers to the events as having occurred at "[a]pproximately 10:20 a.m" (Rec. Doc. 39-6 at p. 7), and defendant Brown's Disciplinary Report of that date which is noted as having been written at 11:30 a.m. and which bears an illegible entry as to the time that the events occurred (Rec. Doc. 39-6 at p. 9). In addition, inasmuch as the gas logbook entry, which was apparently authored by defendant Brown, reflects the weight of the can of chemical irritant both before and after the events complained of, it was necessarily written after the events described in the disciplinary report and Unusual Occurrence Report. Finally, the tier logbook reflects the arrival of defendant Brown on the tier at 10:23 a.m., and all of the pertinent documentation consistently makes reference to defendant Brown having subsequently left the tier and returned for the purpose of obtaining and utilizing the can of chemical agent.

5. The plaintiff also seeks to assert a conspiracy claim against defendant Dauzat, alleging that defendant Dauzat was present on the cell tier at the time that defendant Brown utilized excessive force and that defendant Dauzat joined together with defendant Brown to cause the plaintiff harm. However, even if defendant Dauzat was present on the tier, the conclusory nature of the plaintiff's allegation of conspiracy is fatal to that claim. Moreover, a conspiracy claim requires a showing that two or more defendants have joined together in an agreement to commit an illegal act. *See Moore v. Melvin*, 42 F.3d 642 (5th Cir. 1994) (dismissing the plaintiff's claim of conspiracy where he offered "no allegations to support an agreement between any of the defendants to violate his constitutional rights"). Upon a finding by the Court that the plaintiff has failed to show, in the first instance, that defendant Brown violated the plaintiff's constitutional right to be free of excessive force, the claim of conspiracy asserted against defendant Dauzat must necessarily fail.

768 (5th Cir. 1983).  Any allegation that these defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.  *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.  *Lozano v. Smith*, *supra*, 718 F.2d at 768.

Applying the foregoing standard, the Court finds that the plaintiff has alleged only supervisory involvement on the part of defendants Vittorio and Delaney and has therefore failed to state a cause of action against them.  Further, although the plaintiff complains of the defendants' alleged failure to investigate or take remedial action after learning of the incident, an inmate is not constitutionally entitled to any investigation into an alleged incident or to a favorable response to administrative grievances or disciplinary appeals which he may file relative thereto.  Specifically, there is no procedural due process right inherent in such a claim.  *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).  Accordingly, the plaintiff's claims against defendants Vittorio and Delaney must be rejected.

Turning to the plaintiff's claim, asserted in his Amended Complaint (Rec. Doc. 12), that he was denied appropriate medical attention after the incident, the Court finds that this claim is not properly before the Court.  In order for an inmate-plaintiff to prevail on a claim that his

constitutional rights have been violated by the provision of improper or inadequate medical care, he must allege and show that appropriate care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation which he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Johnson v. Treen, supra*, 759 F.2d at 1238. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 839-40 (1994). The *Farmer* decision makes clear that, in order to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

In light of the foregoing, it is clear that the plaintiff's claim of deliberate medical indifference is unfounded. The plaintiff acknowledges that he was seen by a medical technician on the date of the incident, and he does not assert that the findings of the medical provider, as reflected in the medical report generated at that time, are not accurate. That report reflected that the plaintiff exhibited no acute distress, no redness or rash to his skin, and no indication of trauma. *See* Rec. Doc. 39-10 at p. 4. Although the plaintiff asserts that he suffered with discomfort for an additional two days after the incident and that his requests for additional medical treatment were denied, the plaintiff has failed to state either that any person named as a defendant in this proceeding personally participated in that denial, *see Lozano v. Smith, supra* (requiring personal participation by a defendant in an alleged violation), or that the residual

discomfort which he allegedly experienced as a result of the use of chemical spray subjected him to a substantial risk of serious harm of which any prison official was subjectively aware but ignored.  Accordingly, the defendants are entitled to summary judgment in connection with the plaintiff's claim relative to alleged deficiencies in his medical care after the incident.

Finally, the plaintiff prays for injunctive relief in this case, seeking a modification of the prison regulations applicable to the use of excessive force against inmates.  Specifically, the plaintiff asserts that cameras should be installed on all cell tiers at LSP to record uses of force, that only high-ranking officials at LSP, *i.e.*, "colonels, wardens and tactical team members," should be allowed to utilize chemical spray against inmates, and that the defendants named in this case should be terminated from employment or demoted to the level of sergeants.  The plaintiff is not entitled to the relief requested.  Specifically, there is no federal constitutional requirement that cameras be installed by prison officials in state prisons or that only certain officials be authorized to utilize chemical agents.  Nor do the federal courts become involved in personnel determinations made at the state court level.  *See Maxton v. Johnson*, 488 F.Supp. 1030 (D. S.C. 1980), *citing United States v. White County Bridge Commission*, 275 F.2d 529 (7th Cir.), *cert. denied*, 364 U.S. 818 (1960) (recognizing that a federal district court lacks the inherent power to hire or remove officials not within the executive control of the Court).  Great deference is generally afforded to state officials in the operation and management of the penal institutions under their control, and "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment."  *Sandin v. Connor*, 515 U.S. 472, 482 (1995).  Clearly, therefore, summary judgment is appropriate in favor of the defendants in connection with the plaintiff's claim for injunctive relief.

Finally, the plaintiff seeks to invoke the supplemental jurisdiction of this Court over

potential state law claims. A district court, however, may decline the exercise of supplemental jurisdiction if the state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, considering the allegations of the plaintiff's Complaint and the recommendation of the Court that all of the plaintiff's federal claims be dismissed, the Court recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims, that the plaintiff's Motion for Summary Judgment (Rec. Doc. 41) be denied, and that the defendants' Motion for Summary Judgment (Rec. Doc. 39) be granted, dismissing the plaintiff's claims asserted against the defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on January 16, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**